IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| v. | ] | No. 3:08-00088 |
| | ] | JUDGE HIGGINS |
| TIMOTHY ORLANDO WHITE | ] | |

## MEMORANDUM

The jury found defendant Timothy Orlando White guilty on two counts: felon in possession of a firearm and felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1). The government now seeks enhanced sentencing under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on the ground that the defendant has three prior violent felony convictions. Defendant White filed objections to the Presentence Investigation Report ("PSR") contending that a prior juvenile adjudication should not be counted as a prior violent felony conviction and that the Court should not consider his juvenile record. For the reasons stated below, the Court finds that defendant White's June 3, 1997 juvenile adjudication for aggravated assault qualifies as a violent felony predicate offense under the ACCA and that the defendant's juvenile record is properly considered by the Court in sentencing.

## I. ANALYSIS

### A. PSR Objection No. 1: Application of the ACCA to a prior juvenile adjudication

The ACCA provides in section 924(e)(1):

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not

1

suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

Further, the ACCA provides:

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that–
    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). The statute also provides that "the term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a violent felony." 18 U.S.C. § 924(e)(2)(C).

The PSR lists two (2) prior adult convictions and one (1) prior juvenile adjudication for violent felonies committed by the defendant that the probation officer and the government believe qualify the defendant for sentencing under the ACCA. (PSR ¶ 21.) The two prior adult convictions–for aggravated robbery and evading arrest with risk of death or injury–were committed by the defendant in Davidson County in the year 2000 and those two convictions are not in dispute. The defendant challenges only the inclusion of his juvenile adjudication for aggravated assault, a crime he committed in 1997 at the age of 14. (PSR ¶¶ 21 & 32.)

The Sixth Circuit has held that counting a procedurally-sound juvenile adjudication as a predicate offense for purposes of enhanced sentencing under the ACCA does not violate the due process clause. United States v. Crowell, 493 F.3d 744, 750 (6th Cir. 2007). The PSR indicates in paragraph 32 that the defendant was represented by counsel during the 1997 juvenile proceeding, and

2

the defendant currently raises no claim that the prior juvenile adjudication was procedurally unsound.

The Sixth Circuit has further held in United States v. Wells, 473 F.3d 640, 642 (6th Cir. 2007), that, for purposes of recidivist sentencing under the ACCA, a prior adjudication of juvenile delinquency is subject to characterization under the "categorical approach" mandated for review of prior adult convictions by Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 544 U.S. 13 (2005). A review of the "categorical approach" as set forth in Taylor and Shepard is helpful to the resolution of the pending issue.

In Taylor, the Supreme Court granted certiorari to resolve a conflict among the circuits concerning the definition of "burglary" for purposes of enhanced sentencing under the ACCA, 18 U.S.C. § 924(e). 495 U.S. at 579-580. After reaching a generic definition of "burglary" that federal courts must use when applying the ACCA, id. at 599, the Supreme Court turned to the problem of applying the generic definition to cases in which the state statute under which the defendant was convicted defined "burglary" more broadly, such as by eliminating the requirement that the entry be unlawful or by including places other than buildings, like automobiles and vending machines. Id. This presented the issue of whether "the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." Id. at 600. The Supreme Court adopted the uniform approach taken by the Courts of Appeals that "§ 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. (cited cases omitted). The Court held:

> We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense. [footnote omitted] This

3

categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

    We therefore hold that an offense constitutes "burglary" for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

Id. at 602.

The Supreme Court did not expand on Taylor until nearly fifteen years later in Shepard v. United States, 544 U.S. 13 (2005). Noting the Court had held in Taylor that a district court sentencing a defendant under the ACCA could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction qualified as generic burglary, the Court identified the question in Shepard as "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." Id. at 16. The Supreme Court held that a sentencing court may not look to police reports or complaint applications, but is "generally limited to examining the statutory definition, charging documents, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id. Although Shepard addressed the ACCA in the context of a defendant's guilty plea to a prior offense, the Supreme Court recognized that in cases tried without a jury, "the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge . . . shown by a transcript of plea colloquy or

4

by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." Id. at 20. From such documents, the trial court should be able to tell whether the finding of guilt or the guilty plea "'necessarily' rested on the fact identifying the burglary as generic . . . just as the details of instructions could support that conclusion in the jury case, or the details of a generically limited charging document would do in any sort of case." Id.

In light of Taylor and Shepard, the question now before this Court is whether the Davidson County juvenile judge's determination that defendant White committed the crime of aggravated assault under Tennessee law necessarily rested on the fact that defendant White's act of juvenile delinquency involved the use or carrying of a firearm that would be punishable by imprisonment for a term exceeding one year if the crime had been committed by an adult, and that the act of juvenile delinquency had as an element the use, attempted use, or threatened use of physical force against the person of another or otherwise involved conduct that presented a serious potential risk of physical injury to another. See 18 U.S.C. § 924(e)(2)(B). Taylor and Shepard teach that, because the aggravated assault charge was tried to the juvenile judge without a jury on a plea of not guilty, this Court may now consider only (1) the statutory elements, (2) the charging documents, and (3) any findings of fact that were made by the juvenile judge to determine whether the prior juvenile adjudication qualifies as a "violent felony" for enhanced sentencing under the ACCA.

The government appended to its Sentencing Memorandum (Docket Entry Nos. 121-2, at pages 1-6 and 121-3, at pages 1-2), five separate documents related to the defendant's 1997 juvenile adjudication for aggravated assault in Davidson County Case Number 97-61336, which is the subject

5

of paragraphs 21A. and 32 of the PSR. Under <u>Taylor</u> and <u>Shepard</u>, the Court may consider some of these documents, but not others.

The first document is an "Arrest Order" that was issued on February 14, 1997, and provided for the arrest of defendant White on charges of aggravated assault and assault. The officer's return of service was dated May 1, 1997. Under <u>Taylor</u> and <u>Shepard</u> the Court is not permitted to consider the contents of an arrest warrant in applying the "categorical approach." Therefore, the Court disregards this document.

The second document is the juvenile petition, dated February 14, 1997, which charged the defendant with two crimes: aggravated assault in violation of Tenn. Code Ann. § 39-13-102, and assault, in violation of Tenn. Code Ann. § 39-13-101. It is permissible under <u>Taylor</u> and <u>Shepard</u> for the Court to consider the factual allegations of this charging document. The petition alleges:

> ON FEBRUARY 13, 1997, AT OR ABOUT 8:45 AM, IN DAVIDSON COUNTY, TENNESSEE, THE SUBJECT INTENTIONALLY OR KNOWINGLY DID CAUSE EMANUEL LEACH TO REASONABLY FEAR IMMINENT BODILY INJURY BY USE OF A DEADLY WEAPON, TO WIT: A HANDGUN.
>
> THE SUBJECT INTENTIONALLY, KNOWINGLY, OR RECKLESSLY DID CAUSE BODILY INJURY TO EMANUEL LEACH.
>
> In support of these allegations the petitioner alleges the following specific facts: At Pearl-Cohn High School, the subject held a gun on Emanuel Leach, then hit him in the mouth with the gun and caused an injury requiring stitches.

(Docket Entry No. 121-2, at pages 2-3 (emphasis in original).) The petition was signed under oath by Anne M. Davenport.

Under Tennessee statutory law, a person commits assault who (1) intentionally, knowingly or recklessly causes bodily injury to another; (2) intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly causes physical contact

6

with another and a reasonable person would regard the contact as extremely offensive or provocative. Tenn. Code Ann. § 39-13-101(a). Assault is a Class A misdemeanor unless it is committed under the third provision, in which case assault is a Class B misdemeanor. Tenn. Code Ann. § 39-13-101(b)(1).

Under Tennessee statutory law, a person commits aggravated assault who (1) intentionally or knowingly commits an assault as defined in § 39-13-101 *and* (a) causes serious bodily injury to another *or* (b) uses or displays a deadly weapon; or (2) recklessly commits an assault as defined in § 39-13-101(a)(1) *and* (a) causes serious bodily injury to another *or* (b) uses or displays a deadly weapon. Tenn. Code Ann. § 39-13-102(a). Intentional aggravated assault is a Class C felony, punishable by not less than three (3) and no more than fifteen (15) years in prison, in addition to a fine. Tenn. Code Ann. §§ 39-13-102(e)(1), 40-35-111(b)(3). Reckless aggravated assault is a Class D felony, punishable by not less than two (2) and no more than twelve (12) years in prison, in addition to a fine. Tenn. Code Ann. §§ 39-13-102(e)(1), 40-35-111(b)(4).

The factual and legal allegations of the charging document clearly placed defendant White's use or display of a firearm within the parameters of intentional aggravated assault, a Class C felony, which if committed by an adult would result in punishment of 3 to 15 years in prison. Specific reference was made in the charge to use of a handgun. Defendant White was charged with intentionally or knowingly causing Emanuel Leach to reasonably fear imminent bodily injury by use of a deadly weapon, to wit: a handgun. The crime of aggravated assault as charged in the juvenile petition had as an element the threatened use of physical force against the person of another by use or display of a handgun. Defendant White's alleged act of striking Emanuel Leach with the handgun

7

causing bodily injury to Leach's mouth was charged separately as an intentional misdemeanor assault.

The third document the government provides is the Affidavit In Support Of Application For Arrest Order, which was completed and signed by the victim, Emanuel Leach. (Docket Entry No. 121-2, at page 5.) Under <u>Taylor</u> and <u>Shepard</u>, the Court may not consider an affidavit setting forth the specific facts of the charged crime because the "categorical approach" eschews reliance on the actual facts of the crime. Consequently, the Court disregards the victim's affidavit.

The probation officer's recitation of the juvenile offense in paragraph 32 of the PSR appears to rely on the description of the offense contained in the victim's affidavit in support of the arrest order. Because of this, the Court does not consider or rely on the description of the offense as written in paragraph 32 of the PSR for the purpose of determining the ACCA issue.

Further, the probation officer's recitation does not make clear factually that the juvenile petition charged defendant White with aggravated assault specifically for his intentional conduct in displaying a handgun to the victim as a threat that placed the victim in imminent fear of bodily harm. Rather, the probation officer's description focuses on the defendant's use of the handgun to strike the victim in the mouth, which was charged in the juvenile petition only as a misdemeanor assault.

The fourth document the government provides is entitled, "FINDINGS OF THE JUDGE/REFEREE." (Docket Entry No. 121-2, page 6.) This document does not appear to be the findings of the juvenile judge that were made in support of the final juvenile adjudication. Rather, it appears that this document was completed by the juvenile judge as justification for the issuance of the arrest order for defendant White based upon the affidavit provided by Emanuel Leach. Because this document represents, in effect, the juvenile court's findings in support of probable

8

cause for an arrest, under Taylor and Shepard this Court does not consider the findings included on this page.

Finally, the fifth document the government provides is the "ORDER OF ADJUDICATION/DISPOSITION - DELINQUENCY CASES." (Docket Entry No. 121-3.) The Court considers this document under Taylor and Shepard because the document provides the only findings that were made by the juvenile judge in support of the disposition of the charges. The document reflects that the cause was heard on June 3, 1997, and defendant White was placed on trial in four different cases, including Case Number 61336, the case at issue here. Defendant White had entered pleas of not guilty to the charges of aggravated assault and assault. Based upon the evidence presented at trial, however, the juvenile judge found defendant White guilty of felony aggravated assault as charged in the juvenile petition and dismissed the misdemeanor assault charge. The judge found the defendant to be in need of treatment and rehabilitation and found him to be delinquent. Although the judgment does not reveal what further disposition of the defendant was made, the PSR reports that defendant White was committed to the custody of the Tennessee Department of Children's Services. (PSR ¶ 32.) In any event, what is important for present purposes is that defendant White was found guilty of a violent felony offense which, if committed by an adult, would have been punishable by imprisonment for a term exceeding one year.

Utilizing only the statutory elements of aggravated assault, the charging document, and the juvenile judge's findings following trial, it is established that defendant White was adjudicated guilty of an intentional aggravated assault that necessarily involved use of a firearm and had as an element the use, attempted use, or threatened use of physical force against the person of another. Thus, the "categorical approach" of Taylor and Shepard is satisfied. The prior juvenile adjudication for

9

aggravated assault through use of a firearm qualifies as a violent felony under the ACCA and, with the two other prior adult felony convictions that are not in dispute, results in at least a statutory mandatory minimum fifteen (15) year sentence for defendant White in this case.

The defendant contends that his juvenile adjudication for aggravated assault does not qualify as a "violent felony" under 18 U.S.C. § 924(e)(2)(B), relying on United States v. Wells, 473 F.3d 640 (6th Cir. 2007), a case he claims is "almost identical" to this case. (Docket Entry No. 119, Position Statement at 2.) He contends that Wells applied the "categorical approach" of Taylor, which he says "requires the court to look only to the fact of conviction and the statutory definition of the prior offense to determine whether the defendant committed an offense which may be used for enhancement purposes." (Id.)

Defendant White's characterization of Taylor's holding and his failure to even mention Shepard ignores the Supreme Court's instruction that a district court may consider the charging document and any factual findings made after trial in a non-jury case to determine whether the factfinder was actually required to find all of the elements of a violent felony crime, in this case, aggravated assault committed through use of a firearm. Because the defendant does not employ a complete statement of Taylor or even acknowledge Shepard, it is easy to see why he misinterprets Wells as a case in his favor when the case does not support his position.

In Wells, two prior juvenile adjudications were at issue for purposes of the ACCA. The first was a 1993 adjudication which, on its face, averred that Wells violated the Tennessee aggravated robbery statute by pointing a handgun at the victim and demanding money. Wells, 473 F.3d at 649. But the Sixth Circuit held that this 1993 adjudication could not count as a prior violent felony under the ACCA because Wells did not plead guilty to the crime as charged; rather, he pleaded guilty to

10

the lesser included offense of attempted simple robbery. Because Wells admitted to a crime that did not necessarily or allegedly involve use of a firearm, knife, or destructive device, and use of a firearm was not essential to the crime of attempted robbery, the Sixth Circuit held that the 1993 adjudication could not be used as the third qualifying conviction for sentencing enhancement purposes. Id.

The other juvenile adjudication at issue in Wells occurred in 1997 and involved an aggravated assault. The Sixth Circuit stated that nothing in the language of the Tennessee aggravated assault statute, Tenn. Code Ann. § 39-13-102(a)(1)(B), indicates that an aggravated assault conviction "*requires* proof of the use or display of a firearm, knife, or destructive device[.]" Wells, 473 F.3d at 649. When the statute is examined as a whole, as it was earlier in this memorandum, the Sixth Circuit's statement is technically true because there are several ways that aggravated assault can be committed and the statute does not necessarily require use or display of a firearm. Defendant White seizes on this statement of the Sixth Circuit to argue broadly in this case that the juvenile judge's finding of defendant White's guilt in 1997 to the charge of aggravated assault does not mandate the conclusion that a firearm was used. But this contention overlooks Taylor's and Shepard's teaching that this Court may consider the charging document to determine the offense charged and adjudicated. In defendant White's case, the 1997 petition specifically charged use of a firearm to commit an aggravated assault and the juvenile judge so found on the evidence. As such, this case is not like Wells.

This case is different from Wells for another reason. In Wells the Sixth Circuit went on to say that "even though the defendant [Wells] entered a plea to the petition alleging an aggravated assault, the factual description of *that offense* does not mandate a conclusion that Wells himself was in possession of such a deadly weapon." Id. (emphasis in original.) In other words, as permitted

11

by Shepard in a guilty plea case, the Sixth Circuit looked to the factual description of the aggravated assault offense as it was stated in the petition.

> Indeed, the petition states simply that "on or about November 14, 1997, [Wells] did intentionally attempt to strike officer C.J. Sramek of the K.P.D. with the vehicle he was driving during a robbery and shooting." In this instance, the potentially qualifying crime to which Wells entered a plea is the aggravated assault upon Officer Sramek with an automobile, and only that aggravated assault. What, if anything, Wells (or others) may have been doing prior to attempting to run down Officer Sramek is thus irrelevant to the charged crime. The fact that Wells, or his accomplice, used a firearm in a prior robbery does not mean that any such antecedent criminal activity becomes part of the *aggravated assault*. Because the specific crime upon which Wells's 1997 juvenile adjudication was based did not, therefore, necessarily "involv[e]" the use or carrying of a prohibited weapon, and because Wells did not enter any plea to the alleged robbery and shooting that preceded it, the 1997 adjudication also cannot serve as a third predicate offense to justify imposition of a sentence under the provisions of the Armed Career Criminal Act.

Id. at 649-650 (emphasis in original).

Here, by contrast, defendant White was charged and found guilty of an aggravated assault based upon intentional use of a firearm to place the victim in imminent fear of bodily harm. Based on the charge as stated in the petition, the juvenile judge could not, and did not, find that defendant White committed the crime of aggravated assault in some other fashion allowed by the statute. The judge necessarily found that defendant White committed the aggravated assault through use of a firearm. Consequently, this case can hardly be described as "almost identical" to Wells, as defendant White argues.

The government submits that this case is closer to United States v. Shelton, 290 Fed. Appx. 776 (6th Cir. 2008), than Wells. Unlike the instant case, Shelton involved a juvenile guilty plea to a charge of reckless endangerment. However, in a manner similar to this case, the juvenile petition alleging reckless endangerment explicitly stated that Shelton "shot a gun into a house" and Shelton

12

conceded that point at sentencing. Id. at 779. Because the Sixth Circuit ruled in Shelton that the petition alleged use of a firearm, the Tennessee statute provided that reckless endangerment committed with a deadly weapon is a felony, and the Tennessee statute on reckless endangerment is a violent felony for ACCA purposes as a matter of law, the appellate court affirmed use of the juvenile adjudication as a predicate offense for the ACCA sentencing enhancement. Id. Shelton supports the Court's findings in this case.

In summary, defendant White's 1997 juvenile adjudication for aggravated assault qualifies as the third prior violent felony conviction for purposes of sentencing him as an armed career criminal on the instant convictions for felon-in-possession. Such a holding disposes of his first objection to the PSR concerning paragraphs 21 and 32.

## B. PSR Objection No. 2: Consideration of juvenile record in sentencing

Defendant White's only other objection to the PSR is to the inclusion of his juvenile record in paragraphs 25 through 40. He asserts that his juvenile records were sealed and he did not give consent for review of the juvenile records. Because none of the offenses were within the appropriate time period to be counted in the calculation of criminal history points, see U.S.S.G. § 4A1.2(d)(2), defendant White contends that his juvenile offenses should not have been included in the PSR. The government did not respond to this objection in its sentencing memorandum.

The probation officer points out in the Addendum to the PSR that the government subpoenaed the defendant's juvenile records and provided copies of them to the probation officer. Title 18 U.S.C. § 3661 provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." In light of

13

this statute, defendant White's juvenile records are appropriately placed before the Court for consideration in sentencing, even though they do not result in criminal history points. See United States v. Murphy, 89 Fed. Appx. 516, 518 (6th Cir. 2004) ("The juvenile court record is unquestionably admissible as evidence in the sentencing proceedings. See 18 U.S.C. § 3661[.]" (quotation of statute omitted)).

## II. CONCLUSION

For all of the reasons stated above, defendant White's objections to the PSR will be overruled. The defendant's 1997 juvenile adjudication for aggravated assault qualifies as a prior violent felony conviction under the ACCA. 18 U.S.C. § 924(e). Because the defendant's criminal history includes three prior violent felony convictions as set forth in paragraph 21 of the PSR, the defendant is subject under the ACCA to a term of imprisonment of not less than fifteen (15) years.

Finally, the defendant's juvenile record was properly presented to the Court for consideration in sentencing. 18 U.S.C. § 3661; United States v. Murphy, 89 Fed. Appx. 516, 518 (6th Cir. 2004).

An appropriate Order will be entered.

/s/ Thomas A. Higgins/
THOMAS A HIGGINS
UNITED STATES DISTRICT JUDGE
1-12-10

14